**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| A.H., by and through her<br>Parent, K.P. | )<br>)<br>) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )   C.A. No.  16-726-RGA-MPT |
| | ) |
| COLONIAL SCHOOL DISTRICT, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

## I. INTRODUCTION

This action arises from the denial by the Colonial School District ("the District") of Plaintiffs' ("the Family") request for an Independent Educational Evaluation ("IEE") to be conducted at public expense and to consist of four assessments: (1) a psychiatric evaluation; (2) an occupational therapy evaluation; (3) a functional behavioral assessment; and, (4) a neuropsychological evaluation.[1] On November 24, 2015, the District received a request for an IEE to be conducted at public expense from the Family's counsel - over 14 months after the District released its Evaluation Summary Report ("ESR") dated September 17, 2014.[2] The request was based on the Family's disagreement with multiple evaluations performed by the District.[3] Specifically, the Family disagreed with: (1) the September 17, 2014 ESR; (2) the September 2014 Functional Behavioral Assessment; and, (3) an October 2015 Functional Behavioral

---

[1] D.I. 15 at 1.  A.H. is a minor and brings this suit by and through her mother, K.P.  D.I. 14 at 1.
[2] D.I. 19 at 3.
[3] D.I. 15 at 1.

Assessment.[4]  The District denied the Family's request for a publicly funded IEE, and subsequently filed a request for a due process hearing in accordance with 14 Del. Admin. C. §926.2.4.1.1 and 34 C.F.R. §300.502(b)(2)(i).[5]  Three panelists were appointed to the administrative due process panel in accordance with 14 Del. C. §3135.[6]  The panel heard testimony from six witnesses - including Dr. Kara S. Schmidt ("Dr. Schmidt") - and received documentary evidence and written closings from both parties.[7]  Dr. Schmidt testified as an expert witness for the Family.  Her testimony criticized the District's evaluations and discussed the type of testing she would have conducted had she evaluated A.H.[8]  The central issue before the panel was whether the District's 2014 evaluations of A.H. met the standards of the Individuals with Disabilities Education Act ("IDEA").[9]  After the conclusion of the hearing, the parties requested an extension of the time for the panel to render its decision, which was granted.[10]  On May 23, 2016, the panel rendered its decision and found that the District's evaluations met the requirements of the IDEA, and the Family was not entitled to a publicly funded IEE.[11]

Subsequent to the hearing, the Family moved to West Chester, Pennsylvania, and A.H. enrolled in the West Chester Area School District for the 2016-2017 school

---

[4] *Id.*

[5] D.I. 19 at 3.

[6] *Id.*

[7] *Id.*

[8] *Id.*; D.I. 17 at Tab 5, Dr. Schmidt testimony at 369-70, 374-76, 380-81, 391-402, 409-11.

[9] D.I. 19 at 3.

[10] *Id.* at 4.  It appears that this joint request for an extension was for counsel to complete their written closing arguments.

[11] *Id.*

2

year.[12]  On August 19, 2016, the Family filed their complaint seeking reversal of the panel's decision.[13]  By Order dated December 2, 2016, the court authorized the parties to file a motion on or before January 13, 2017 to supplement the administrative record.[14]  Currently before the court is the Family's motion pursuant to 20 U.S.C. §1415(i)(2) to supplement the administrative record with the neuropsychological evaluation report by Dr. Schmidt.[15]

## II.    BACKGROUND

A.H. is a ten-year-old girl who is currently in fourth grade and identified as a student with disabilities, and therefore, is eligible to receive special education and related services under the IDEA and applicable Delaware law.[16]  A.H. has undergone an Individualized Education Program under the disability classification of Emotional Disturbance since 2014.[17]  Her history of diagnoses includes Attention Deficit Hyperactivity Disorder, Oppositional Defiant Disorder and Post Traumatic Stress Disorder.[18]  Although A.H. has not been formally diagnosed, doctors have also suggested that A.H. has a Mood Disorder-Not Otherwise Specified, Multiple Personality Disorder and Schizophrenia.[19]  In the past, she has been admitted to the Terry

---

[12] D.I. 15 at 4.
[13] *Id.*
[14] *Id.*
[15] D.I. 14 at 1.  The Family states that a motivation for obtaining the recent neuropsychological evaluation is to "assist [A.H.] with her educational programming in her new school district."  D.I. 15 at 4.
[16] D.I. 15 at 2.
[17] *Id.*
[18] *Id.* at 2.
[19] *Id.* at 3.

Children's Psychiatric Center. She currently takes psychotropic medications.[20] At a very young age, A.H. was the victim of sexual abuse at the hands of her father, with whom she no longer has contact.[21]

A.H. has struggled significantly with academics due to her multiple disabilities, and consistently failed to meet grade level standards.[22] She displays a history of chronic, severe behavioral issues at school, which include physically attacking other students and teachers, throwing temper tantrums, engaging in self-injurious behaviors and threatening to kill others, among other violent acts.[23] Although A.H. began exhibiting these violent tendencies as early as kindergarten, Colonial did not perform any testing other than an Occupational Therapy evaluation and a Speech and Language evaluation to determine A.H.'s eligibility for special education services prior to the District's September 17, 2014 ESR.[24]

## III. GOVERNING LAW

Under the IDEA, a party aggrieved by the findings and decision of an administrative panel has the right to bring a civil action in federal court for judicial review.[25] When an aggrieved party files such an action, the court shall: (1) receive the records of the administrative proceedings; (2) hear additional evidence at the request of the party; and (3) base its decision on a preponderance of the evidence, as well as

---

[20] *Id.*

[21] *Id.*

[22] *Id.* A.H. was administratively placed in first grade, retained in second grade, and administratively placed in third grade. A.H.'s scores on standardized assessments are below required benchmarks. *Id.*

[23] *Id.*

[24] *Id.*

[25] 20 U.S.C. §1415(i)(2)(B).

grant such relief as it determines appropriate.[26]  The IDEA explicitly provides for a
federal court to accept additional evidence when necessary to make a proper
determination of the matter before it.[27]  The standard of review for these types of actions
is described as a modified form of *de novo* review.[28]  However, a court choosing to hear
additional evidence is "free to accept or reject the agency findings depending on
whether those findings are supported by the new expanded record and whether they
are consistent with the requirements of the [IDEA]."[29]  The court has wide latitude to
determine what constitutes "additional evidence" within the guidelines of the IDEA.[30]

> While a district court appropriately may exclude additional evidence, a
> court must exercise particularized discretion in its rulings so that it will
> consider evidence relevant, non-cumulative and useful in determining
> whether Congress's goal has been reached for the child involved.[31]

Congress's goal in enacting the IDEA was to "ensure that each child with disabilities has
access to a program that is tailored to his or her changing needs and designed to
achieve educational progress."[32]  The term "additional" should be construed by courts in
the ordinary sense of the word to mean "supplemental."[33]  "This clause does not
authorize witnesses at trial to repeat or embellish their prior administrative hearing

---

[26] 20 U.S.C. §1415(i)(2)(C).
[27] 20 U.S.C. §1415(i)(2).
[28] *Murray By and Through Murray v. Montrose County Sch. Dist.*, 51 F.3d 921, 927 (10th Cir. 1995).
[29] *S.H. v. State-Operated Sch. Dist. of the City of Newark*, 336 F.3d 260, 270 (3d Cir. 2003) (quoting *Oberti v. Bd. of Educ. of the Borough of Clementon Sch. Dist.*, 995 F.2d 1204, 1220 (3d Cir. 1993)).
[30] *Susan N. v. Wilson Sch. Dist.*, 70 F.3d 751, 760 (3d Cir. 1995).
[31] *Id.*
[32] *Id.*
[33] *Town of Burlington v. Dept. of Educ.*, 736 F.2d 773, 790 (1st Cir. 1984), *aff'd on other grounds*, 471 U.S. 359 (1985).

testimony."[34]

The United States Supreme Court has instructed courts to afford "due weight" to the administrative proceedings.[35] "The purpose of the 'due weight' obligation is to prevent the court from imposing its own view of preferable educational methods on the states."[36] The court in *Breanne C. v. S. York County Sch. Dist.*, 2010 WL 773945 (E.D. Pa. Feb. 26, 2010) outlined a non-exhaustive list of factors that a court may consider to determine whether additional evidence will be allowed:

> (1) the existence of a procedural bar which prevented the introduction of the proffered evidence below, such as a limitations period or a restriction on the number of witnesses; (2) whether the evidence was deliberately withheld at the administrative level for strategic reasons; (3) whether the introduction of the additional evidence at the district court level would be prejudicial to the other party, i.e., if the additional evidence would interfere with the adverse party's ability to rebut it; and, (4) the potential impact on the administration of justice, i.e., does the party seek to introduce a new theory under which it will be entitled to relief.[37]

"The reasons for supplementation will vary; they might include gaps in the administrative transcript owing to mechanical failure, unavailability of a witness, an improper exclusion of evidence by the administrative agency, and evidence concerning relevant events occurring subsequent to the administrative hearing."[38]

"The starting point for determining what additional evidence should be

---

[34] *Id.*; *See* 20 U.S.C. §1415(e)(2).

[35] *Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206-07 (1982).

[36] *Oberti v. Bd. of Educ. of the Borough of Clementon Sch. Dist.*, 995 F.2d 1204, 1219 (3d Cir. 1993).

[37] *Breanne C. v. S. York County Sch. Dist.*, 2010 WL 773945, at **1-2 (M.D. Pa. Feb. 26, 2010).

[38] *Town of Burlington v. Dept. of Educ.,* 736 F.2d 773, 790 (1st Cir. 1984), *aff'd on other grounds*, 471 U.S. 359 (1985).

received . . . is the record of the administrative proceedings."[39]  Therefore, "a party seeking to introduce additional evidence at the district court level must provide some solid justification for doing so."[40]

## IV.  DISCUSSION

In their motion to supplement the administrative record pursuant to 20 U.S.C. §1415(i)(2)(B), the Family argues the court should grant its request because the neuropsychological report by Dr. Schmidt was not available at the time of the hearing, is useful to the court's consideration of the issues in this matter, and admission of the report would not prejudice the District.[41]  The Family also contends that because the panel improperly noted in its decision the subsequent progress of A.H., the Family should be allowed to rebut this finding by showing A.H. had actually regressed.[42]

The District responds that the admission of the neuropsychological evaluation should be denied because it is irrelevant to the central issue in this case (i.e., whether the District's 2014 evaluations were appropriate under the IDEA standards), is unfairly prejudicial to the District, serves no constructive purpose for the court, and, because Dr. Schmidt testified during the due process hearing, is cumulative.[43]

In determining what additional evidence, if any, should be allowed, it is helpful to begin with a review of the administrative record, in particular, examination of Dr.

---

[39] *Id.*
[40] *Rowland M. v. Concord Sch. Comm.*, 910 F.2d 983, 996 (1st Cir. 1990).
[41] D.I. 15 at 2.
[42] D.I. 20 at 3-5, 7-8.
[43] D.I. 19 at 2.

Schmidt's testimony and the proposed neuropsychological evaluation.[44]

Dr. Schmidt's report does not show that A.H. has, in fact, regressed. Her report evinces that A.H. is generally between the low average to average grade and/or age expectations in many of her classes, consistent with the District's evaluations.[45] Dr. Schmidt's report, as well as the District's reports, show that A.H. particularly struggles with math, writing, reading, and memory retention and retrieval.[46] There is no evidence, explicit or otherwise, in either Dr. Schmidt's testimony or in her neuropsychological report that indicates A.H. has regressed.[47]

Furthermore, admission of Dr. Schmidt's neuropsychological report is prejudicial to the District. Granting a motion to supplement the administrative record would not allow the District to rebut any of Dr. Schmidt's subsequent findings. Her report was, admittedly, compiled after the conclusion of the due process hearing and after the panel's decision finding that the District's previous evaluations of A.H. were appropriate and met the standards of the IDEA and applicable Delaware law.[48]

Dr. Schmidt's report prepared in the Fall 2016 is also an embellishment of her testimony during the due process hearing. It bolsters her own testimony that the District's evaluations were inappropriate with respect to the adequacy and the nature of the testing performed. During the hearing, Dr. Schmidt testified at length regarding

---

[44] *Town of Burlington v. Dept. of Educ.*, 736 F.2d 773, 790 (1st Cir. 1984), *aff'd on other grounds*, 471 U.S. 359 (1985) ("The starting point for determining what additional evidence should be received . . . is the record of the administrative proceedings.").
[45] *See generally* D.I. 15-1.
[46] *See* D.I. 15-1; *see also* D.I. 18 at Tab 8 at §§ 8, 9, 16.
[47] *See* D.I. 15-1; *see also* D.I. 17 at Tab 5, Dr. Schmidt testimony at 339-435.
[48] D.I. 15 at 2.

8

what she considered to be the proper standard of testing for a child like A.H.[49]  Her neuropsychological report merely supports her prior testimony by arguing that had the District evaluated A.H. in the manner she thinks appropriate, the panel would have reached a different conclusion consistent with the Family's position, that is, the District's evaluations were inadequate.[50]  In this respect, the neuropsychological report is cumulative.  Her conclusion regarding A.H.'s situation and needs have remained largely unchanged.[51]

Lastly, the Family argues that because they could not afford to pay for Dr. Schmidt's evaluation, which made her report unavailable at the time of the hearing, their motion to supplement the administrative record should be granted.[52]  The court finds this argument unpersuasive because it was not until after the unfavorable determination by the panel, that the Family employed Dr. Schmidt to evaluate A.H.[53]

Neither the record, the pleadings nor the Family's arguments show a gap in the administrative record due to mechanical failure, the unavailability of Dr. Schmidt to testify at the hearing, an improper exclusion of evidence by the administrative agency, or evidences relevant events which occurred after the administrative hearing.[54]

---

[49] *See* D.I. 17 at Tab 5, Dr. Schmidt testimony at 339-435.
[50] *Compare* D.I. 17 at Tab 5, Dr. Schmidt testimony at 339-435 *with* D.I. 15-1.
[51] *Compare* D.I. 17 at Tab 5, Dr. Schmidt testimony at 339-435 *with* D.I. 15-1 at 20-29.
[52] D.I. 15 at 8.
[53] *Id* at 8.  Plaintiffs' counsel advanced payment for Dr. Schmidt to conduct an evaluation of A.H., and it is her report - generated *after* the hearing - that the Family seeks to introduce into evidence.  Nothing in the record indicates why the advancement and evaluation did not occur prior to the hearing.  *Id.*
[54] *See Breanne C. v. S. York County. Sch. Dist.*, 2010 WL 773945, at **1-2 (M.D. Pa. Feb 26, 2010) (A non-exhaustive list of factors that a court may consider when determining whether to allow supplementation of the administrative record.); *see* at 6

Therefore, the neuropsychological report prepared by Dr. Schmidt should not be admitted.[55]

## V.    CONCLUSION

For the reasons contained herein, it is recommended that:

(1) The Family's motion to supplement the administrative record with the neuropsychological evaluation report (D.I. 14) be DENIED.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), FED. R. CIV. P. 72(b)(1), and D. Del. LR 72.1.  The parties may serve and file specific written objections within fourteen (14) days after being served a copy of this Report and Recommendation.  Objections and responses are limited to ten (10) pages each.

The parties are directed to the Court's Standing Order in Non-Pro Se matters for Objections Filed under FED. R. CIV. P. 72, dated October 9, 2013, a copy of which is available on the Court's website, www.ded.uscourts.gov.

Dated: April 17, 2017                          /s/ Mary Pat Thynge
                                               UNITED STATES MAGISTRATE JUDGE

---

herein for factors.
    [55] *Susan N. v. Wilson Sch. Dist.*, 70 F.3d 751, 758 (3d Cir. 1995) ("[T]he question of the weight due the administrative findings of facts must be left to the discretion of the trial court.  The traditional test of findings being binding on the court if supported by substantial evidence, or even a preponderance of the evidence, does not apply.  This does not mean, however, that the findings can be ignored.  The court, in recognition of the expertise of the administrative agency, must consider the findings carefully and endeavor to respond to the hearing officer's resolution of each material issue.  After such consideration, the court is free to accept or reject the findings in part or in whole.").